Charles LANGHAM, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–231.

Court of Criminal Appeals of Oklahoma.

Feb. 22, 1990.

**1280**

Frank R. Courbois, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

CHARLES LANGHAM, appellant, was tried at a non-jury trial, upon stipulation by the parties to the facts for the crime of Possession of Controlled Dangerous Substance with Intent to Distribute in violation of 63 O.S.1981, § 2–401; Possession of a Weapon While Committing a Felony in violation of 21 O.S.1981, § 1287; and Maintaining a Place Where Controlled Dangerous Substances are Kept in violation of 63 O.S.1981, § 2–404, in Case No. CRF–86–6674 in the District Court of Oklahoma County. Appellant was represented by counsel. The judge found appellant guilty of Possession of Cocaine With Intent to Distribute and sentenced him to ten years imprisonment. From this judgment and sentence, appellant appeals.

On December 9, 1986, a search warrant was executed at 200 Northeast 14th, Apartment B–3, in Oklahoma County, Oklahoma. Pursuant to the warrant, Detective Ed Killibrew entered the apartment and observed three people inside, including appellant. The residence was searched. Appellant was arrested and during a pat-down search, seventy-nine (79) sealed plastic packets of rock cocaine were found in his front-left jacket pocket.

Detective Glen Ring, who assisted on the execution of the warrant, found a .38 caliber derringer and $385.00 on appellant's person. The money was in denominations of five, ten and fifty dollar bills. Included in the money was evidence money which had been used earlier to make an undercover purchase. Finally, various and sundry drug related items were found in the apartment.

In his sole proposition of error, appellant contends that the trial court erred in overruling his motion to suppress the evidence. Relying on *Merry v. State*, 766 P.2d 1377, 1379 (Okl.Cr.1988) and *Guthrey v. State*, 507 P.2d 556, 560 (Okl.Cr.1973), appellant asserts that the affidavit underlying the search warrant was impermissibly vague.

In *Merry*, a majority of this Court stated that different tests are applied to determine the validity of a search warrant, depending on whether a state or federal constitutional claim is raised. *Id.* at 1379. If a federal constitutional claim is raised, the "totality of the circumstances" test enunciated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) is to be applied. However, if a state constitutional claim is raised, the test set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which requires that the State show the informant was reliable and his information credible, is to be applied. *Contra Long v. State*, 706 P.2d 915, 916 (Okl.Cr.1985).

■ Upon further review however, we find that the "totality of the circumstances" approach is far more practical with treatment of probable cause than is any rigid demand that specific tests be satisfied by every informant's tip. As the Supreme Court stated in *Gates*, probable cause is a fluid concept, turning on the assessment of probabilities in particular factual contexts

not readily, or even usefully, reduced to a neat set of legal rules. *Gates*, 462 U.S. at 231–32, 103 S.Ct. at 2328–29, 76 L.Ed.2d at 544. Furthermore, rigid legal rules are ill-suited to an area of such diversity as informant's tips. One simple rule will not cover every situation. *Id.* *See also Foster v. State*, 742 P.2d 1131, 1133 (Okl.Cr.1987). For these reasons, we expressly abandon the *Aguilar–Spinelli* "two-pronged test" insofar as it applies to state constitutional claims, and in its place, we adopt the totality-of-the-circumstances analysis. To the extent the rationale of *Merry v. State*, 766 P.2d 1377 (Okl.Cr.1988); *Corley v. State*, 713 P.2d 12 (Okl.Cr.1986); *Guthrey v. State*, 507 P.2d 556 (Okl.Cr.1973) and *Mills v. State*, 594 P.2d 374 (Okl.Cr.1979) is inconsistent with this opinion, they are hereby expressly overruled, and we continue to adhere to our decisions in *DeGraff v. State*, 2 Okl.Cr. 519, 103 P. 538 (1909) and *Long, Supra*, as to the proper interpretation of the Oklahoma Constitution.

■ Under the totality-of-the-circumstances approach, the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332–33, 76 L.Ed.2d at 548. Furthermore, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id.*

■ In the present case, Detective Killibrew presented an affidavit to a magistrate on December 9, 1986. In the affidavit, Detective Killibrew provided: his assignment and experience; the information received from the confidential informant; that a controlled purchase had already been made from the location to be searched; that the informant observed a substantial quantity of contraband at the location; the length of time he had known the informant; and the past performance and reliability of the informant. Without holding that this affidavit is sufficient for all cases, we do find in the present case that the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant.

Finding no error, the judgment and sentence is AFFIRMED.

LUMPKIN, J., concurs.

PARKS, P.J., and BRETT, J., concur in result.

LANE, V.P.J., specially concurs.

PARKS, Presiding Judge, concurring in result:

While I concur in the majority's ultimate disposition of this case, I cannot concur in abandoning the *Aguilar–Spinelli* standard as it applies to state constitutional attacks upon search warrant affidavits. This Court has acknowledged that Article II, § 30, of the Oklahoma Constitution was derived from the United States Constitution's Fourth Amendment and that United States Supreme Court decisions regarding the Fourth Amendment are considered highly persuasive in interpreting Article II, § 30. *See Long v. State*, 706 P.2d 915, 917 (Okl.Cr.1985). However, it is also well established that state courts, as the final interpreters of state law, may impose higher standards on searches and seizures than those required by the federal Constitution, even if the state constitutional provision is similar to the Fourth Amendment. *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730, 734 (1967). *See also Turner v. City of Lawton*, 733 P.2d 375, 381 (Okl.1986).

> [The] *Aguilar* and *Spinelli* [standards] preserve the role of magistrates as independent arbiters of probable cause, insure greater accuracy in probable-cause determinations, and advance the substantive value of precluding findings of prob-

able cause, and attendant intrusions, based on anything less than information from an honest or credible person who has acquired his information in a reliable way. Neither the standards nor their effects are inconsistent with a "practical, nontechnical" conception of probable cause. Once a magistrate has determined that he has information before him that he can reasonably say has been obtained in a reliable way by a credible person, he has ample room to use his common sense and to apply a practical, nontechnical conception of probable cause.

*Illinois v. Gates,* 462 U.S. 213, 287, 103 S.Ct. 2317, 2358, 76 L.Ed.2d 527 (1983) (Brennan and Marshall, JJ., dissenting). The *Gates* standard "provides no assurances that magistrates, rather than the police, or informants, will make determinations of probable cause; imposes no structure on magistrates' probable-cause inquires; and invites the possibility that intrusions may be justified on less than reliable information from an honest or credible person...." *Id.* 462 U.S. at 291, 103 S.Ct. at 2360. In short, the *Aguilar–Spinelli* test affords greater protection to individuals' rights against unreasonable searches and seizures, through a practicably structured inquiry, than does the "totality of the circumstances" rule enunciated in *Gates.* Accordingly, I dissent to the abandonment of this Court's long-standing precedent of applying the *Aguilar–Spinelli* standard to state constitutional attacks upon search warrant affidavits.

LANE, V.P.J., specially concurring.

I concur in the majority's decision to adopt the "totality of the circumstances" test of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, I am concerned that the opinion of the majority may be misleading when it appears to establish a test for magistrates to find a *"fair probability* that contraband or evidence of a crime will be found in a particular place." I recognize that this is language that was used in the *Gates* deci-

sion, but it seems to suggest a lesser standard than I perceive. It should be noted that the *Gates* court concluded the opinion with the language "It is apparent, therefore, that the judge issuing the warrant had a 'substantial basis for ... conclud[ing]' that probable cause to search the Gateses' home and car existed." 462 U.S. at 246, 103 S.Ct. at 2336, 76 L.Ed.2d at 553. I think this language a better statement of the test, that is, when considered in the totality of the circumstances, there is a substantial basis for probable cause to believe the contraband or evidence is on the premises.

BRETT, Judge, concurring in result:

I strongly disagree with the majority's decision to abandon the *Aguilar–Spinelli* standard in favor of that set forth in *Illinois v. Gates.* Accordingly, I would concur in result for the same reasons stated by Judge Parks.